LAMETTI and OTHERS, executrix and executors of
Lametti, *against* ANDERSON.

COVENANT, tried *January*, 23d, 1824, at the *New-York*
circuit, before EDWARDS, C. Judge.

The action was on an indenture of lease, dated the 4*th*
day of *February*, 1799, between the defendant as lessor,
and one *Warner*, as lessee of a dwelling house and lot,
in the city of *New-York*, *habendum*, to *Warner* and his
executors, &c. and assigns, from the 1*st* of *May* then
next, for, &c. 21 years; at a rent of $165.

*Warner*, thereby covenanted that he, his executors, &c.
or assigns, should peaceably, &c. at the determination of
the term, surrender into the hands and possession of the
defendant, his heirs or assigns, the demised lot, together
with all such buildings and improvements, as might be
then remaining thereon, the defendant, his, &c. paying
for such of the said buildings and improvements, as might
be erected and made thereon by *Warner*, his executors,
&c. or assigns, in the manner thereinafter mentioned.
The parties then mutually covenanted and agreed, for
themselves, severally, and for their several and respective
heirs, executors, &c. and assigns, that it should be lawful
for *Warner*, his executors, &c. or assigns, at his and their
proper costs and charges, during the term, to take down
the dwelling house, standing on the demised lot at the
date of the lease, and erect thereon such buildings as he,

A., by in-
denture, de-
mised a build-
ing lot in the
city of *New-
York*, with a
dwelling
house and
shop thereon,
to W. for 21
years, at a rent
of $165.—W.
covenanted
that he, his
executors, &c.
or assigns,
would, at the
end of the
term, surren-
der the demis-
ed lot, with all
such buildings
and improve-
ments as
might be then
remaining
thereon, A.
paying for
such of the
buildings and
improvements
as might be
erected and
made thereon
by W. his ex-
ecutors, &c.
or assigns.
The parties a-
greed that W.

his executors, &c. or assigns, at his and their proper costs and charges, during the term,
might take down the dwelling house, and erect such other buildings as he, his executors,
&c. or assigns might think proper; and that all such buildings and improvements, as should
be so erected, and made, and remaining on the demised lot at the end of the term, should
be valued (in a manner specified.) And A. should pay W., his executors, &c. or assigns,
the amount of the valuation, not exceeding $1,500.

*Held*, that this was neither a building nor repairing lease; that the covenant to pay ex-
tended to a new building, to be erected at the option of the tenant; but that though the
old house was not torn down, and a new one erected; yet the lessor was liable to pay for
such additions to, and alterations of the old house, as amounted to improvements: not, how-
ever, for ordinary repairs; such as new roofing the old house, or re-building the chimney.

The term being passed by mesne assignments to L., though the improvements were not
made by him; but mainly by the lessee, before assignment; in an action by the executors
of L. on the covenant to pay for the improvements; *held*, that this covenant ran with the
term, which having passed to L. by assignment, before the covenant was broken, carried
the covenant to L., who, or whose executors, might maintain an action upon it, in his or
their own names.

his executors, &c. or assigns, might think proper ; that all such buildings and improvements as should be so erected and made, and remaining on the demised lot, at the end of the term, should then be valued and appraised by indifferent persons, one of whom should be chosen by each of the parties, or by their respective legal representatives ; and in case the two persons could not agree in' the appraisement, then they should choose a third indifferent person ; and such three persons, or any two of them, should make the appraisement in writing, under their hands and seals ; and that, thereupon, the defendant, his heirs or assigns, should pay to *Warner*, his executors, &c. or assigns, the amount of the valuation, provided that such amount should not, on any account, exceed $1,500.

The term yet to come of this lease was assigned by *Warner*, under his hand and seal, to *Pell*, on the 23*d* of *February*, 1807 ; and on the 13*th* day of *January*, 1814, in the same form reassigned by *Pell* to *Warner ;* and so by *Warner*, on the 14*th* of the same *January*, to *Lametti*, the testator.

The above particulars appeared upon the declaration, (which went upon the covenant to pay,) and oyer ; and were admitted upon the trial.

The plaintiffs then produced on the trial, an appraisement ; but, on the defendant's objecting to it, on account of certain formal defects, withdrew it ; and the defendant then agreed to try the cause on its merits, reserving all rights he might have upon the state of the pleadings ; and particularly the right to object, that the plaintiffs could not maintain the action in their own names.

The plaintiffs then proved that the dwelling house standing on the demised premises at the date of the lease, had never been taken down. They then offered to prove that material alterations of, and additions to the dwelling house, had been made by *Warner*, to wit, an entire new story underneath, which was rendered necessary, in consequence of the street in front having been lowered 8 feet; an addition to the rear of the house, and rebuilding the chimney, and altering the staircases; and the plaintiffs

claimed the value of the whole.    The defendant objected, that the plaintiffs were not entitled to recover, unless the dwelling house had been taken down, and improvements made by putting a new building or buildings on the lot. The judge decided that the plaintiffs might prove any alterations or additions to the house, or adjoining building on the lot, made during the term, and remaining at its expiration.    The defendant excepted to this opinion.

The plaintiffs then gave the proof offered, and that a new roof was put on the house ; and that various additions to, and alterations of a shop, standing on the demised premises at the commencement of the term, were made. That it was then a mere harness maker's shop, weather boarded, and there was a large gangway between that and the house.    That during the term, this shop had been converted into a dwelling house, and extended over the gangway so as to join the other house ; a chimney was built in it, and two convenient stories made in that part which formed the first story.    That a wall worth 70 dollars had been made by the lessee to keep the ground of the adjoining lot from falling on the demised lot ; and that the whole of the additions and alterations made during the term, were worth, (including the wall,) about $2,300.

The judge charged the jury, that all alterations and additions made to the house or shop, during the term, and remaining at its expiration, should be allowed, if they amounted to improvements of the house or shop ; to be valued at their worth when the term expired.

The defendant excepted to this charge.

The jury found for the plaintiffs.

The case came here on the bill of exceptions.

*J. I. Drake*, for the defendant, moved for a new trial. He said the plaintiffs were not entitled to recover any thing.   In true construction, the covenant does not cover either repairs or improvements.    The $1,500 were intended to pay for a new house, to be erected in place of the old one ; and nothing more.    This is a building lease, not a lease for repairs.   Improvements in the lease, *do*

not mean repairs, or alterations, but new erections only. The intent of the parties is to be regarded. An indenture is the language of both parties. There is not one word concerning repairs in the lease. The first clause is a building clause; and the word *improvements*, afterwards added, is a mere expletive. The words *manner hereinafter mentioned*, refer to the mode of payment or appraisal merely. The object was to secure a good building at the end of the term. (*Lant* v. *Noris*, 1 *Burr.* 287.) Additions and repairs to a house, are not equivalent to rebuilding. (3 *Atk.* 512.)

But the plaintiffs cannot recover in their own names, if entitled to recover at all; the subject of the covenant, as I have shown, not being *in esse* at the date of the lease; and so is *Spencer's* case, (5 *Rep.* 16, 17. 1*st res.*) The second resolution in that case is, that though the covenant be to make a new erection, yet if the word *assigns* be used, it shall then bind the assignee. But here the word *assigns* is not used throughout. It does not occur in the covenant touching the mode in which the appraisement is to be made. The words here are the parties, *or their legal representatives*, which do not include assigns. A covenant in a lease, relative to things merely personal, demised with the land, does not run with the term. (*id.* 17, 3*d res.*) The reason is, that the rent arises out of the land, and it is not certain that the chattels will go to the assignee. Here the thing never has come to the assignee; for it never has been built. Privity, both of estate and contract, must be shown by the plaintiffs. (*Shep. Touch.* 176. 1 *Saund.* 241, *and notes.* 2 *Selw. N. P.* 426, *and the cases there cited.*) Here there is no privity, not even to support a right of distress; the term having expired, and the premises being surrendered. (5 *Cowen*, 407. 10 *John.* 424.)

*P. W. Radcliff,* contra. The only question, aside from that of parties, is, whether the covenant extends beyond taking down the buildings and erecting new ones. If there be a doubt on this head, that doubt should be turned

against the covenantor. This rule applies alike to indentures and deeds poll. (1 *Esp. Dig.* 271.) The only question is, for whose benefit was the covenant intended? And if one will make an ambiguous covenant to another, the construction shall be most favorable for the latter. But we do not need the aid of this rule. The judge who tried this cause, gave to the covenant its strict legal and grammatical construction. *Buildings erected and improvements made*, is the sensible distribution of the words. If the phrase, *in the manner hereinafter mentioned*, does not refer to the mode of appraisal, it must refer to buildings and improvements made at the expense of the lessee. If it be doubtful, we have seen that it should receive the latter construction. The dwelling house could not be taken down without the consent of the lessor. Such an act would have been waste ; and the testator would not only have been liable to an action ; (13 *John.* 31 ;) but he would have forfeited his term. Hence the license to take down was inserted. But it is a mere license, of which the lessee might or might not avail himself, at his election.

As to the plaintiffs' right of suing in their own names, the counsel for the defendant treats this covenant as a chose in action, in itself not assignable. But it was not so. It was no more a chose in action, than rent yet to fall due upon a lease. It was an unbroken covenant, which ran with the term, and passed to the assignee. The one who held the lease at the expiration of the term, had the right, and the sole right, to sue upon it. If these plaintiffs cannot maintain an action upon it, no one can. Will it be pretended that each of the three different persons who held this lease, shall each have an action in respect to the different stages of building or improvements during their several tenancies ? Till the end of the lease, it was not known that the lessor would be liable to pay any thing to any body. All rights passed to the assignees. The improvements belonged to the last assignee, who was entitled to the value. Then for the first time, a cause of ac-

tion arose. Then this covenant did become a chose in action.

*P. C. Van Wyck*, in reply. Neither the word *repairs* nor *alterations*, is contained in the lease, and they are very properly omitted in the pleadings. Repairs are certainly out of the case ; and a sum in gross was given for a particular object, which was building. All the lessor gets, is an old house repaired and kept in order, against 21 years deterioration on it. This is no more than the tenant was bound to return to him, without one word being said in the lease on the subject. The very relation of landlord and tenant, implies that the latter should repair. But all the repairs in the world cannot satisfy the covenant in a building lease. (*City of London* v. *Nash*, 3 *Atk.* 512.) It was not intended that the old house should be retained, and surrendered up, nor its necessary repairs paid for. There is but one place for building on the city lots of the class to which this belongs. If there be a house already, it must, therefore, be torn down before another can be erected. The word *repairs* is well understood ; and if that be omitted, no word can supply its place. The word *improvement* means something new. Both the pleadings and proof should have shown that the old house was demolished.

*Curia, per* SAVAGE, Ch. Justice. There are but two points in this case of much importance : 1. Can the plaintiffs sustain the action in their own names ?

2. Is the defendant liable for any additions, &c. unless the old house was taken down, and a new one erected ?

The objection under the first point is, that the covenant does not run with the land ; and the assignee cannot, therefore, prosecute for a breach : and *Spencer's* case, (5 *Co.* 17,) is supposed to sustain the proposition. That case is not in point. The action was brought against an assignee of the term, upon a covenant by the lessee to build a wall on the demised premises ; and the court held him not liable, because not named. In such cases, they

Lametti
v.
Anderson.
held the rule to be, that the covenant was binding upon the assignee, when it related to something *in esse,* parcel of the demised premises, to repair, for instance ; but not when it concerned something to be built thereafter. Yet it was held, that even the latter covenant would be obligatory upon the assignee, if named. The sixth resolution in that case is, " if lessee for years covenants to repair the houses during the term, it shall bind all others, as a thing which is appurtenant, and goeth with the land, in whose hands soever the term shall come." It is further resolved, seventhly, that the assignee, or his executor, should have covenant. (*id.* 18.)

According to this case, had the lessee, *Warner*, covenanted to erect buildings upon the demised lot ; not only the lessee, but the assignee, and the executors of the assignee, would have been liable in this action for a breach of the covenant. The same doctrine is found in the other authorities cited by the counsel on this point ; and in *Com. Dig. Covenant,* (*B.* 3.) If the assignee would be liable on such a covenant, surely he must have a right of action, for the violation of a corresponding covenant on the part of the lessor.

The plaintiffs have an undoubted right to maintain the action in their own names, if they have succeeded in shewing a right to recover at all.

I do not consider this either a *building* or a *repairing* lease. Those terms are peculiarly applicable to cases where the tenant pays no rent ; but enjoys the premises a sufficient length of time to compensate him either for building or repairing, according to his contract. *The city of London* v. *Nash,* (3 *Atk.* 512,) was a case where the lessee undertook to re-build certain houses. He had a lease of them for sixty years. He, or rather his assignee, did not re-build all, but repaired some of the houses. This was held to be a breach of the covenant.

Here the lessor grants a house and lot for a certain term, at a certain rent. The lessee was not bound to repair any farther than so as, at the end of his term, to return the premises in good tenantable condition ; unless the coven-

ant in the lease was compulsory upon him to build. The first covenant is, that the lessee shall surrender, at the end of the term, the " lot of ground, with all such buildings and improvements as may be then remaining thereon, he the said *Charles Anderson*, his heirs or assigns, paying for such of the said buildings and improvements as may be erected and made thereon, by the said *Jacob Warner*, his executors, administrators or assigns, in manner hereinafter mentioned." Here it is observable, that the lot was to be surrendered, with *all the buildings and improvements then remaining*. But *Anderson* was to pay for such only *as may be erected and made* by *Warner*. Now, if it was intended to pull down the old house at all events, this discrimination between the buildings to be surrendered, and those to be paid for, was idle and unmeaning. The next covenant, however, proceeds : " and it is mutually covenanted and agreed, by and between the parties, &c. that it shall and may be lawful for the said *Jacob Warner*, his heirs, &c. at any time during the said term hereby granted, at his and their own proper costs and charges, to take down the said dwelling house, now standing on the said hereby demised lot of ground, and to erect thereon such buildings as he, the said *Jacob Warner*, &c. may think proper ; and all such buildings and improvements as shall be so erected and made, and remaining on the said lot hereby demised, at the end of the said term, shall then be valued," &c. ; the money to be paid, not to exceed $1,500. The true construction of this covenant, seems to me to be this : that the lessee might make any alterations which he pleased ; and it should be optional with him to take down the old house, and build a new one, or make any other erections which he should think proper ; provided the lessor should only pay for such as the lessee left at the end of the term, and which should be impovements ; to the amount of $1,500.

I apprehend, however, that a fair construction of the lease does not authorize a recovery for ordinary repairs. It was improper, therefore, to receive evidence of these ; such as new covering the old house, or rebuilding the

chimney. The lease does not speak of repairs, but build-
ings and improvements. That must mean new buildings,
or such alterations in the old one as to make it more con-
venient.

The charge of the judge was correct; but as improper
testimony was received, a new trial should be granted;
the costs to abide the event.

New trial granted.