BURNEE CORPORATION, Landlord, Appellant, *v.* UNEEDA PURE
ORANGE DRINK CO., INC., MORRIS SEID, LUNSFORD BAYS and
ABRAHAM DRUBITZ, Tenants, Respondents.*

Supreme Court, Appellate Term, First Department, June 22, 1928.

**Summary proceedings to dispossess — petition — proof indicates existence
of relation of landlord and tenant — lease gave landlord, in event it
elected to erect new building, right to cancel lease " on May 1, 1927,"
by giving tenants sixty days' prior notice in writing — tenants agreed
to surrender lease on receipt of notice — lease construed as terminating
May 1, 1927, providing proper prior notice had been furnished — petition
in this proceeding is not defective on jurisdictional grounds, within
meaning of Civ. Prac. Act, § 1410, subd. 1 — cancellation clause was
conditional limitation with right to invoke summary proceedings to
dispossess — clause ran with land.**

This is a summary proceeding in which it appears that in March, 1919, a lease
of the entire premises was executed for a period from April 1, 1919, to June
15, 1944, to a party who subsequently assigned his lease to another, who in
turn assigned it to the original lessor of the tenants in this proceeding under a
lease covering the corner store in the building for a period of ten years from
May 1, 1922. The store lease contained a cancellation clause to the effect that
in the event the landlord elected to erect a new building on the premises, it
should have the right to cancel the lease " on May 1, 1927, by giving the tenants
sixty (60) days' prior notice in writing " of intention to cancel the lease and
the tenants agreed, upon receipt of the notice of cancellation, to surrender the
lease and premises to the landlord without further notice. On February 10,
1927, the lessor corporation sublet the entire building to another realty cor-
poration for substantially the balance of the term, the sublease expiring one
day before the principal lease. That lease was made subject to the overlease
of 1919 and to existing subleases and tenancies. On March 22, 1927, that
corporation assigned its lease to the petitioner herein, but prior to the assignment
and on February 26, 1927, the assignor served a cancellation notice to the effect
that it had elected to cancel and terminate the lease and " your tenancy there-
under on the 1st day of May, 1927," for the purpose of erecting a new building
on the premises. The tenants failed to surrender possession and these summary
proceedings were instituted in hold over.

The existence of the relation of landlord and tenant between petitioner's assignor
and the store tenants is shown by the petition, since plaintiff's assignor was
assignee of the landlord; the stipulation that the assignor's sublease was subject
to existing subleases and tenancies meant that the possession of the assignor
was subject to the right of possession given the store tenants under leases from
the original landlord, so that petitioner's assignor, or petitioner, in effect the
assignee of the store tenant's lessor, is entitled to maintain this proceeding.

The lease which gave the landlord the right to cancel in the event it elected to
erect a new building, should be construed as terminating on May 1, 1927, pro-
viding the proper prior notice had been furnished; therefore, the petition is not
jurisdictionally defective in that it does not appear therefrom that the term
expired, within the meaning of subdivision 1 of section 1410 of the Civil
Practice Act.

* Revg. 129 Misc. 659.

Furthermore, the clause in question is a conditional limitation with the right to invoke summary proceedings, but cannot be regarded as a condition subsequent for breach of which the remedy of ejectment alone would be available.

Since the purpose of the cancellation clause was to insure the landlord an opportunity to improve the land, the clause would seem to be a covenant running with the land.

Appeal by the landlord by permission from order of the Municipal Court, Borough of Manhattan, Ninth District, dismissing its petition in summary proceedings.

*Barber, Fackenthal & Giddings* [*Joseph Diehl Fackenthal* of counsel], for the appellant.

*McDermott & Turner* [*W. Irving Taylor* of counsel], for the respondents.

Levy, J.   The tenants in this summary proceeding appeared specially to move to dismiss the petition on the ground that the Municipal Court did not have jurisdiction.   The point of their contention is the utter lack of the conventional relation of landlord and tenant; and even if that should be deemed to exist, there are no facts to indicate that the tenants were actually holding over. The basis upon which the landlord endeavored to sustain its position involves the consideration of a somewhat complex chain of title. On March 21, 1919, the 719 Seventh Avenue Corporation executed a lease of the entire premises 719 Seventh avenue to one Kern for a period from April 1, 1919, to June 15, 1944.   The latter assigned his interest to Amron, who in turn transferred it to the Amron Realty Corporation, which is the original lessor of the tenants in this proceeding, under a lease covering the corner store in the building, for a period of ten years from May 1, 1922.   The store lease contains the following cancellation clause, the interpretation of which is one of the issues:

" *Twenty-seventh.* The tenants hereby agree to and with the landlord that in case the landlord elects to erect a new building on the premises of which the demised premises are a part, then and in that event the landlord shall have the right to cancel this lease on May 1, 1927, by giving the tenants sixty (60) days' prior notice in writing to be sent by registered mail to the offices of the tenants or to the demised premises, of his intention to cancel this lease for the reason that he intends to erect a new building, and the tenants agree that upon receiving such notice from the landlord of the cancellation of this lease for the reason above mentioned, that they will surrender the said lease and premises to the landlord without any further notice."

On February 10, 1927, the Amron Corporation sublet the entire

building, of which the corner store is but a part, to the Loventhal Realty Corporation, for substantially the balance of its term, the sublease expiring on the 14th day of June, 1944, one day before the termination of the principal lease. It was made " subject to the overlease dated March 21, 1919, and * * * *to existing subleases and tenancies,* to the state of facts shown on survey made by Earl B. Lovell, dated May 19, 1910, and to building restrictions and requirements in the resolution and ordinances adopted by the Board of Estimate and Apportionment of the City of New York July 25, 1916, * * *." On March 22, 1927, the Loventhal Corporation assigned its sublease to the petitioner. Prior to this assignment and on February 26, 1927, the Loventhal Corporation served a cancellation notice to the effect that it " has elected and elects to cancel and terminate your lease and your tenancy thereunder on the 1st day of May, 1927, for the reason that the landlord has elected and elects to erect a new building on the premises of which the premises mentioned in the aforementioned lease are a part." The tenants failing to surrender possession, the petitioner on the 6th day of May, 1927, instituted these summary proceedings in holdover, which resulted in the dismissal of the petition. This appeal is taken by leave granted below.

There is no merit in the contention that the petition does not show the existence of the relation of landlord and tenant between the Loventhal Realty Corporation and the store tenants, for the sublease to the Loventhal Corporation was of all the building, including the portions thereof, occupied by the store tenants, for a term extending beyond the term demised by the store leases. As to the store leases, therefore, the Loventhal Corporation was assignee of the lessor, and the stipulation that the Loventhal sublease was subject to existing subleases and tenancies meant simply that the possession of the Loventhal Corporation was subject to the right of possession given the store tenants under their leases from the Amron Realty Corporation, just as the right of possession of the grantee of the fee of real property, assignee by operation of law of the grantor-lessor, is subject to tenancies existing at the time of the conveyance. (Real Prop. Law, § 223; *Russo* v. *Yuzolino,* 19 Misc. 28; *Stewart* v. *Long Island R. R. Co.,* 102 N. Y. 601; *O'Connell* v. *Sugar Products Co.,* 114 Misc. 540.) It follows that the Loventhal Corporation or its assignee, in effect the assignee of the store tenants' lessor, was entitled to maintain this proceeding.

It is further claimed that the petition is jurisdictionally defective in that it does not appear therefrom that the term has expired within the meaning of section 1410, subdivision 1, of the Civil Practice Act. Where the term has ended, either by lapse of time or by

**438** Burnee Corp. *v.* Uneeda Pure Orange Drink Co., Inc.

Appellate Term, First Department, June, 1928. [Vol. 132

limitation, it has expired within the meaning of the statute. On the other hand, the happening of a contingency provided for in the lease, which grows out of a mere condition the breach or performance of which confers a right of re-entry upon the landlord, does not *ipso facto* end the term, the tenancy not having expired within the meaning of the act. The landlord, however, in such case may re-enter, and the method of exercising the right of re-entry is by an action of ejectment to recover possession of the demised premises, although he may, without action, take peaceable possession. (*Cohen* v. *Carpenter*, 128 App. Div. 862.) " At common law the right to re-enter, except when entry can be made without force, is simply the right to maintain ejectment, and we find no statute which has changed the rule." (*Michaels* v. *Fishel*, 169 N. Y. 381, 389.) The only breach of condition provided for in our statute of 1820 (chap. 194) authorizing summary dispossession — apart from the section relating to absconding tenants — was non-payment of rent, the other contingency being the expiration of the term. Accordingly, under that statute, the question was early presented whether in a given situation, in the absence of an expiration of the term by lapse of time, there was a limitation within the meaning of the act which permitted the landlord to have recourse to the summary remedy, or whether a mere breach of condition was presented giving a right of re-entry. In the latter event there could be no expiration of the term under the act and the summary remedy would not be available. (*Oakley* v. *Schoonmaker*, 15 Wend. 226; *Beach* v. *Nixon*, 9 N. Y. 35; *Miller* v. *Levi*, 44 id. 489.)

As may be expected, the cases on the subject, down to our own time, abound in subtle distinctions between conditions and limitations. Ordinarily in the construction of a contract the court endeavors to get at the intention of the parties to the instrument so as to effectuate their purpose; but in the interpretation of a lease in this connection, such intention is not necessarily controlling, for if the landlord and the tenant should agree that upon the happening of a certain event the term shall end and the landlord shall be entitled to resort to the summary remedy, nevertheless, should the contingency provided for present a condition and not a limitation, the intention is nugatory. (*Beach* v. *Nixon, supra; Janes* v. *Paddell*, 67 Misc. 420.) At the same time the courts, to prevent an immediate forfeiture of the tenancy, seem ever on the alert to grasp at the words " condition," " entry," " re-entry " and the like, as indicative of the intention of the parties to create a condition as we have come to know it, rather than a limitation. (*Penoyer* v. *Brown*, 13 Abb. N. C. 82; *Matter of Guaranty Bldg. Co.*,

52 App. Div. 140; *Riesenfeld, Inc., v. R-W Realty Co., Inc.,* 223 App. Div. 140.)

In the present case the court below held the clause relied upon by the landlord to be a condition authorizing ejectment, and not a conditional limitation with the right to invoke summary proceedings. In view of this holding and the confusion surrounding the subject generally, it may not be inappropriate to review the authorities, even at some length. A precise statement of the distinction is found in Tiffany on Landlord and Tenant (Vol. 2, § 194-c) as follows: " A condition subsequent, on a breach of which by the tenant his estate may be terminated by the landlord, is to be distinguished from a ' special (or collateral) limitation,' by which the tenant's estate is limited to continue only until the happening of some contingent event, in which case the tenant's estate terminates on such event without any action on the part of the landlord. In both cases the duration of the estate is subject to a contingent event, but while in the case of a condition the words providing for its termination upon a contingency are not regarded as a part of the original limitation of the estate, and consequently the mere happening of the event does not terminate the estate, but action on the part of the landlord is necessary for this purpose, in the case of a special limitation; on the other hand, the words of contingency are regarded as a part of the original limitation of the estate, and consequently the estate necessarily terminates immediately upon the happening of the contingency, without any action by either party."

The same thought is thus expressed in *Lyon v. Hersey* (103 N. Y. 264, 269): " The difference between a limitation, and a condition, is defined to be, that in order to defeat the estate in the latter case, it requires some act to be done, such as making an entry, to effect it, while in the former, the happening of the event is, in itself, the limit beyond which the estate no longer exists, but it is determined by the operation of the law without requiring any act to be done by any one." What has made the application of the distinction difficult is the presence of a volitional element, or the exercise of an option on the part of the landlord, which seems at first glance to be in conflict with the fundamental conception of a limitation of the estate arising without any action by either party. Primarily, the term undoubtedly implies the expiration of the term by the happening of a contingency provided in the lease, independent of the will of the landlord or of any breach by the tenant, " as when land is granted to a man so long as he is parson of Dale, or so long as he continues unmarried, or the like." (*Miller v. Levi, supra,* 494, citing Crabb Real Prop. §§ 2135, 2136.) Ordinarily, the

happening of the contingency will terminate the lease and discharge both parties from any future liability. But in many agreements of this character the occurrence of the objective contingency merely furnishes the landlord the election to cancel without a similar privilege to the tenant.

In *Matter of Lonas* v. *Silver* (201 App. Div. 383) the lease provided that upon the city's taking over certain property and the failure of the arbitrators to agree upon a rental for the remainder within four months, " then, at the option of the party of the first part, this lease shall forthwith cease and determine anything herein contained to the contrary notwithstanding." The court (at p. 385) thus interpreted this stipulation: " The lease in effect provided for a ten-year term, unless sooner terminated, (1) by the city's taking over a portion of the property; (2) the failure of the arbitrators to agree upon a new rental within four months thereafter, and (3) the exercise of the option to terminate by the landlord. The lease ' expired,' within the meaning of the statute, upon the service of the landlord's notice that he had exercised his option, and summary proceedings were properly invoked. (*507 Madison Ave. Realty Co., Inc.*, v. *Martin*, 200 App. Div. 146; *Matter of Szpakowski*, 166 id. 578.) No condition was violated, but the term expired of its own limitation upon the happening of the events provided for."

In *Hollander* v. *Horowitz* (206 N. Y. Supp. 184) the lease gave the landlord the option of terminating it if the tenant violated any of its terms, and the Appellate Term, Second Department, said: " Although it seems to be in conflict with other cases, we feel constrained to follow the decision in *Lonas* v. *Silver*, 201 App. Div. 383, 195 N. Y. Supp. 214, though but for this we would hold otherwise, and therefore to hold that the provision of the lease giving the landlords the option of terminating it if the tenant violated any of its terms was a conditional limitation." The only apparent difference between the *Lonas* and the *Hollander* cases is that in the *Lonas* case the lease provided for a contingency — without notice but at the landlord's option — not founded on the breach of any condition by the tenant, whereas in the *Hollander* case the asserted limitation could arise only out of such a breach and without notice. In accordance with the controlling authorities, therefore (*Oakley* v. *Schoonmaker, supra; Beach* v. *Nixon, supra*), it would seem that in the *Hollander* case there was no limitation of the term.

Sometimes there is an implication without express words that the limitation is for the benefit of one or the other of the parties, and may only be taken advantage of by the party for whose benefit it is made. In this sense must be interpreted the case of *Cohen* v.

*Afro-American Realty Company* (58 Misc. 199) which involves the interpretation of a clause in the lease that the filing of any legal process against the tenant " shall cause this lease immediately thereafter to cease and come to an end." The tenant endeavored to evade the obligation of paying rent by claiming that the lease had automatically terminated by the filing of process against it, but this court (at p. 200), speaking through Mr. Justice BISCHOFF, held that the limitation clause " was inserted wholly for the benefit of the landlord; and the mere fact that process against the tenant was filed, at some person's instance, could not relieve him from his obligation to pay rent, unless, by some act which affected the possession, the landlord signified his intention to avail himself of this condition of the lease. Such a condition could be no more self-executing, at the tenant's election, than would a provision terminating the lease for nonpayment of rent."

A development of the primary form of limitation, in which the happening of the future contingency is controlled neither by the landlord nor the tenant, is one in which such future happening provided as a possibility in the lease is set in motion by the landlord. This is probably the most frequent type of conditional limitation and is well illustrated by the clause which furnishes the landlord the right to terminate the lease on a number of days' notice in the event of a *bona fide* sale of the property (*507 Madison Ave. Realty Co., Inc., v. Martin,* 200 App. Div. 146; affd., 233 N. Y. 683), or in case of an intention to rebuild the premises (*Hudson & Manhattan R. R. Co. v. Mayers,* 117 Misc. 183), or by express reservation without any reason given. (*Anderson v. Hebbard,* 56 Misc. 664.) The giving of such notice, in accordance with the stipulation of the parties, results in limiting the tenant's tenure, and upon the expiration of the time specified in it the lease automatically terminates. This is a true type of conditional limitation although it involves an act of volition on the part of the landlord. The difficulty of comprehending it as such is due to the fact that the contingency which is generally regarded as an objective event, in this instance flows from the conduct of one of the parties. But in a broader sense an occurrence which may terminate a lease covers not only an independent event but also an affirmative act by the landlord, which he is privileged to perform under the authority of the lease, and upon the valid exercise of which a limitation of the term arises *ipso facto.* This is well illustrated by instances in which the contingency although procured by the landlord terminates the lease even without notice. Thus, in *Morton v. Weir* (70 N. Y. 247) the landlord reserved the right to sell the demised premises and the parties covenanted that upon such sale or agreement to sell,

the lease should be terminated and the demise ended. While the case involved an action at law, not a summary proceeding, still it is clear that the court in ruling that " upon the sale the term ended by force of the agreement," held the clause to be one of limitation.

The third example of conditional limitation grows out of a breach of condition on the part of the tenant. That type arises from a provision inserted in leases for the benefit of the landlord, whereby, upon a violation by the tenant, the former is entitled to serve a notice electing to terminate the lease after the expiration of a certain specified time, thus creating a limitation of the term measured by the period of time fixed in the notice. The distinction between the right to take advantage of a breach of condition generally and the right to terminate for the same cause by giving notice that the term will end at an earlier date, is illustrated in Chaplin on Landlord and Tenant (§ 606), quoted with approval in *Matter of Guaranty Bldg. Co.* (*supra,* at p. 142): " The election of the landlord to take advantage of a breach of condition by entry, and thus terminate the estate, is to be distinguished from the case where, by the provision of the lease, the term is created to endure only until an option to earlier end it has been exercised by the landlord. In the latter case, upon the exercise of the option, the term ' expires ' in the sense of the statute."

This is also a true type of conditional limitation, because, as is expressed in *Martin* v. *Crossley* (46 Misc. 254, 256): " it is the *notice* and not the *breach of condition* which operates upon the lease." (Italics mine.) The breach is only an event antecedent to, and not the direct cause of, the expiration. The landlord is given the privilege in the original instrument to cancel it by notice, which practically substitutes a short period for the original term, and whether the occasion of this notice is the breach of the condition or a cause which does not reflect upon the tenant's conduct is quite immaterial. The lease expires by a mode of limitation which the landlord is granted the sole privilege to exercise. As is stated in *Cottle* v. *Sullivan* (8 Misc. 184, 188): " In the language of the lease the service of the notice, and the expiration of the time fixed by it, were to have the same ' effect as if that were the expiration of the original term of the lease.' Those acts created the expiration of the term. No re-entry or other act of respondents was necessary."

But in no case can a lease expire automatically by reason of a breach of condition. This is well illustrated in *Janes* v. *Paddell* (*supra*). There the lease provided that in the event of default by the tenant, the lease, upon the election of the lessor, should

cease and terminate. The landlord, however, without notice, instituted summary proceedings claiming that the default had *ipso facto* ended the term and gave her the privilege to evict the tenant. Commenting adversely upon this, Mr. Justice LEHMAN, speaking for this court, said (at p. 424): " The landlord claims that she is permitted to exercise this option, without notice, by bringing these proceedings. The fallacy of the argument is apparent, when we consider that this proceeding can be brought only upon allegation and proof that the term has expired; and such an allegation is impossible, if the lease continues until the minute when the proceedings are begun. To base proceedings upon the expiration of a lease, the landlord must be able to point to some moment previous to the bringing of the proceedings at which the lease has expired."

It is not the bringing of summary proceedings, even after the service of a notice that the lease has expired by reason of tenant's default, that confers jurisdiction in these circumstances. The lease must provide that the term in such an eventuality expires at a precise time after the giving of notice. In this respect the situation differs from the other types of limitation considered, in which the happening of the contingency of itself, works a termination of the lease, and in which the sending of the notice is merely an added obligation of the landlord under the indenture.

In the light of the principles enunciated let us examine the provision in dispute. A careful reading of the 27th clause of the lease fails to indicate an intent to provide for re-entry for breach of condition. There is no reference whatever either to a forfeiture of the term or re-entry by the landlord. The whole purpose is to provide for an automatic expiration of the term after the lapse of sixty days following the landlord's election to rebuild, with notice to that effect. Whether the purpose proved abortive and resulted in a clause which is meaningless and, therefore, cannot be construed as a conditional limitation of the term, is something to be considered presently. But it is perfectly plain that the provision in question contains no eventuality of any breach by the tenant. And it may be pertinent to ask what condition the tenants could possibly breach? The only duty devolving upon them was to surrender the premises at the expiration of the sixty-day period without any further notice. Their failure to surrender at the expiration of the term is not, strictly speaking, a breach of condition, but a wrongful holdover for which the statute furnishes the landlord the summary remedy. In *Weinman* v. *Trainor* (114 Misc. 403) the lease provided: " Should the said premises be sold the tenant agrees to vacate same to any time on 30 days notice."

The landlord sent such notice, and upon failure of the tenant to remove, brought summary proceedings. The court reversed the order in the landlord's favor on the following ground (p. 404): " The provision of the lease under which the landlord claims possession is a condition of the lease and not a conditional limitation. The term of the lease did not expire by the giving of the thirty days' notice. By refusing to vacate the tenant has breached a covenant which gives the landlord the right to re-enter or a suit for damages."

By confining him to the right to re-enter the court evidently relegated the landlord to his common-law remedy of ejectment; but in spite of the rather loose phraseology of the covenant, the conclusion reached is apparently contrary to the weight of authority. Thus in *Ronginsky* v. *Grantz* (39 · Misc. 347) a clause providing that " if the lessor sold the premises  *  *  *  the tenant should vacate and surrender  *  *  *  on receiving a three months' notice," was held a conditional limitation. And in *Manhattan Life Insurance Co.* v. *Gosford* (3 Misc. 509, 510) a clause in the lease which provided " that if the landlord shall at any time deem the tenancy undesirable, then the tenant will vacate the premises and render up peaceable possession thereof to the landlord after two months' notice in writing to be left in or upon said premises,  *  *  * " was also held to be a limitation. To the same effect see *Lusonray Holding Co.* v. *McCastline* (192 App. Div. 156). In *Baxter* v. *City of Providence* (40 Atl. [R. I.] 423) it was argued that an agreement by the tenant to surrender and deliver possession in the event of sale was not a conditional limitation and that the lease was not voided, because there had been no re-entry. The court was of opinion, however, that " a sale was to terminate the lease *ipso facto*, and the lessee's covenant signified his assent to this; otherwise, no adequate force can be given to it." This construction of the very lease was adopted in *Rhode Island Hospital Trust Co.* v. *Baxter* (20 R. I. 553).

But the possibility remains that while no provision for a technical future breach of condition is made in the paragraph in question, and the tenant has been guilty of no such violation, nevertheless no true conditional limitation may be found in the language. If the clause contained a stipulation for the landlord's " re-entry " at the expiration of the sixty days mentioned in the notice, there might be room for contention, as in *Penoyer* v. *Brown* (*supra*). There we find that the lease was granted upon condition that in the event the landlord deems the tenant objectionable, *he shall have authority to re-enter* on giving five days' previous notice and tendering repayment of rent for the unexpired term; and " upon

the expiration of said notice, and tender of payment as aforesaid, said landlord   *   *   *   shall be entitled to the immediate possession of the demised premises." Judge McADAM refused to entertain summary proceedings, and after careful consideration of *Miller v. Levi,* he found a slight element of distinction. The case was a very close one, but the determining feature seems to have been the provision that the landlord should have authority to re-enter upon expiration of the notice. It led to the possible inference that the lease did not expire by the limitation fixed in the notice, but that an affirmative act of the landlord — that of re-entry — was necessary. No such inference is possible in the instant case obviously because no re-entry is specified. In *Riesenfeld, Inc.,* v. *R-W Realty Co., Inc.* (*supra*), decided by the Appellate Division of this department, one of the controlling elements too, was the provision that the lessor, after giving notice of his option to terminate, might immediately or at any time thereafter re-enter " and upon such re-entry all rights of the tenant and all persons occupying or claiming under it in said demised premises shall cease and be wholly terminated and ended." Commenting upon this the court there said (at p. 148): " It thus clearly appears that under the terms of the lease the lease was not terminated by a breach of the covenant, but only became terminated at the option of the landlord to take advantage thereof followed by actual re-entry."

Was there any affirmative act to be performed by the landlord here at the expiration, or during the period of, the sixty-day term? Respondents seem to contend that the right of the landlord to *cancel* the lease implies such an act before the term can be said to end. But the sending of the notice is, in itself, a cancellation effective as of the terminal date therein mentioned. The word *cancel* is the equivalent of *terminate.* In general parlance the limitation clause of the lease is referred to as the *cancellation* clause. It is so denominated in respondents' very brief. In *Ashton Holding Co., Inc.,* v. *Levitt* (191 App. Div. 91) a lease provided that in case of a sale of the property, the landlord might *terminate* the lease by giving twenty days' written notice. This was held to be a conditional limitation. The only apparent distinction between the case under consideration and the one cited is in the use of the word *cancel.* In *Bruder* v. *Geisler* (47 Misc. 370), where the tenant " agrees to cancel said lease " in the contingency provided for, it was held that the words were equivalent to a provision that the tenant agrees that the lease shall be thereby canceled without any further affirmative act. Similarly in *112–114 Ridge Street Corp.* v. *Glickman* (193 N. Y. Supp. 448, 449) the court said: " An agreet ment between landlord and tenant to cancel a lease in the even-

of a certain contingency is equivalent to a conditional limitation thereof, and it terminates the lease and ends the term thereof. [*Bruder* v. *Geisler*, 47 Misc. 370; *Matter of Szpakowski*, 166 App. Div. 578, 579.]"

Respondents claim that the word *expire* is not employed anywhere in the clause, and otherwise comment upon its inartistic language. It abundantly appears from the authorities that the use of that word is not a *sine qua non* of a limitation. It does not occur in the leading case of *Miller* v. *Levi*, where the limitation arose in favor of the landlord from a " privilege reserved to terminate the lease at the end of any year by giving sixty days previous notice, in case he should sell or desire to rebuild." Undoubtedly some confusion is caused by the distinction in a few of the cases between the words *terminate* and *expire* (*Matter of Guaranty Bldg. Co., supra; Janes* v. *Paddell, supra*), it having been said that a breach of condition furnishes the landlord the right to *terminate* the lease, while the conditional limitation causes the estate to *expire.* Unfortunately this terminology has sometimes led to the wrong assumption that *terminate* is an expression referable particularly to the act of a landlord upon the tenant's breach of condition. As matter of fact the term is extensively used in conditional limitation clauses and it is so employed in the very *Miller* case. It is also found in the cancellation notice in the instant case, as is its equivalent *cancel* in the lease itself. No inference adverse to the contention of the landlord can, therefore, be drawn from the absence of the word *expire.*

Respondents further contend that the 27th paragraph should be read in the light of the 16th, which contains a five-day conditional limitation clause consequent upon breach, and which is expressed in precise language. Comparing the former with the latter clause they argue that as both were drawn by the same attorney, the difference in terminology supports the view that the 27th paragraph could not have been intended as a limitation. There is no doubt that it was somewhat carelessly drawn. It provides, as already observed, for the cancellation of the lease on May 1, 1927, upon giving to the tenant sixty days' *prior* notice in writing by registered mail of the " intention to cancel this lease for the reason that he intends to erect a new building, and the tenants agree that upon receiving such notice from the landlord of the cancellation of this lease for the reason above mentioned that they will surrender the said lease and premises to the landlord without any ‘further notice." Of course, the intent was not that the tenant would surrender *upon* receiving the sixty-day cancellation notice, but only *after* the times specified in that notice. Such seems to have been

the construction in *Childs* v. *Skillin* (39 Misc. 825) where the tenant agreed to yield up possession " upon receipt of thirty days notice."

While the language here employed in the latter part of the clause is somewhat careless, the first part is sufficiently precise to clearly indicate the exact date of termination, May 1, 1927, provided that proper prior notice has actually been furnished. Any other interpretation renders the clause absolutely meaningless, a result which should be avoided in the construction of contracts. In any event, by no stretch of principle can it be regarded as a condition subsequent for breach of which the remedy of ejectment alone would be available.

Before considering the final contention of respondents that the clause, even if a conditional limitation, did not constitute a covenant running with the land, it may be well to note the preliminary objection that the effect of the notice which was given by the Loventhal Realty Corporation was destroyed by the assignment of its sublease to the present petitioner. This appears to be disposed of by the result reached in *Hudson & Manhattan R. R. Co.* v. *Mayers (supra)*. There the lease authorized the landlord to terminate by mailing to the lessee at least six months before such termination date a written notice, provided the former desired to make substantial structural changes or to rebuild the premises. Within a few days after the giving of the notice the landlord granted a lease of the premises to a third party, which undertook to make certain changes in the building. The tenants refused to surrender possession and summary proceedings were initiated. In reversing the dismissal of the proceedings the court said (at p. 185): " If the lessor, the petitioner herein, at the time of the giving of the notice had the intention of making substantial structural changes in or to rebuild the premises, his election could not be defeated merely because he desired to make those changes through the instrumentality of a subsequent lessee rather than directly by a contractor. The method of carrying out this work — whether by the lessor or by a subsequent lessee — would be proper for consideration by the jury as throwing light on the good faith of the landlord as to his alleged intention, but should not as matter of law deprive the lessor of the benefit of the covenant."

If, however, respondents are correct in the position that the notice by the Loventhal Corporation was ineffective, because the right in that direction belonged solely to its lessor, then of course the notice was unavailing. This brings us to the consideration of the final question, whether the covenant was personal or one running with the land. Respondents emphasize the fact that the clause

here provides that in case the *landlord* elected to erect a new building the tenants were to surrender the lease of the premises. They point to the fact that this language, together with the provision that the lease was to be binding upon the parties and their legal representatives, indicates that the covenant was purely a personal one. They argue that while the lease was binding upon the successors of the individual parties, this specific covenant did not affect those who succeeded the corporate entities. This conclusion, based upon the use in the lease of the expression *legal representatives*, is somewhat far fetched. As is said in *Adler* v. *Lowenstein* (52 Misc. 556, 557): " In common parlance that expression means administrators or executors, but legally it is not always so exclusive. ' The term " legal representatives " is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of the law.' *New York Mut. Life Ins. Co.* v. *Armstrong*, 117 U. S. 591, 597. ' When found in instruments other than those relating to the administration of estates or the affairs of the deceased persons, it has been construed sometimes to mean assignees, or a certain class of purchasers, accordingly as it was supposed the parties must have understood it.' *Warnecke* v. *Lembea*, 71 Ill. 91, 93. From the whole instrument, as well as from its several parts, from its subject matter and situation of the parties, it may be concluded that the parties to the lease understood the *right to cancel*, as therein provided, *would pass even to subsequent grantees*, and so to the landlord herein." (Italics mine.)

Obviously, the very purpose of the cancellation clause was to insure the landlord an opportunity to improve the land. Emphasis is lent to this view by the lease which the Amron Corporation executed to the Loventhal Corporation, by the terms of which the lessee was *obliged* to erect a new building. The petitioner in endeavoring to comply with this is acting under the mandatory provisions of the lease. In such improvement the lessor has a vital interest, because despite the sublease to the present petitioner it still retains a reversionary right in the property. The cancellation clause would thus seem to be a covenant running with the land. (*507 Madison Ave. Realty Co., Inc.*, v. *Martin, supra.*) In *Douglaston Realty Co.* v. *Hess* (124 App. Div. 508) the court had for consideration a covenant providing for a six months' notice of termination in the event of sale, and on payment to the tenant of the *pro rata* amount of expenditures by her made in repairs and improvements on the property. Mr. Justice JENKS (at p. 510) said: " I think that the covenant ran with the land, for it related to repairs and so to some-

thing *in esse*. (*Lametti* v. *Anderson*, 6 Cow. 302; affd., *sub nom.*
*Anderson* v. *Lametti*, 6 Wend. 326; *Thompson* v. *Rose*, 8 Cow. 266;
*Verplanck* v. *Wright*, 23 Wend. 510; *Belden* v. *Union Warehouse
Co.*, 11 App. Div. 163, and authorities cited.)   It is not essential
that such a covenant should name the assigns of the covenantors.
Thus in *Thompson* v. *Rose* (*supra*) the court say: ' Such a cove-
nant to repair extends to the support of the thing demised, and is,
*quadammodo*, annexed and appurtenant to it, and shall bind the
assignee, though he be not named.' (See, too, *Denman* v. *Prince*,
40 Barb. 213, 217, and authorities cited; *Winfield* v. *Henning*, 21
N. J. Eq. 188; 8 Am. & Eng. Ency. of Law [2d ed.], 137, and
authorities cited.)"

In the same case, too, the court cited with approval *New York Mut.
Life Ins. Co.* v. *Armstrong* (*supra*) as to the meaning of the term
" legal representatives," and reached the identical conclusion as in
*Adler* v. *Lowenstein* (*supra*), namely, that its use did not necessarily
restrict the benefits of the lease to the original parties and their
personal representatives.

It follows that the language of the lease created a conditional
limitation and the covenant is one running with the land; and as
the petition presents the jurisdictional requirements it was error
to dismiss.   The order is, therefore, reversed, with ten dollars costs,
and the motion denied, with ten dollars costs, with leave to tenants
to answer within five days on payment of said costs.

All concur; present, BIJUR, LEVY and CRAIN, JJ.