NEW-YORK, May, 1836.

Oakley
v.
Schoonmaker.

---

## OAKLEY *vs.* SCHOONMAKER.

When, instead of a reservation in a *lease* of a *certain rent*, or of what may be *rendered certain,* the tenant is only bound to yield a *proportion of the grain raised* by him, or in other words, is to work the farm on shares; the *landlord,* upon a non-compliance with the terms of the lease, cannot remove the tenant from the possession of the demised premises by availing himself of the statute authorizing summary proceedings.

Nor can such proceedings be instituted on the ground of the expiration of the term by *forfeiture;* the expiration of the term mentioned in the statute means expiration by lapse of time.

LANDLORD AND TENANT. Schoonmaker, under the statute authorising *summary proceedings to obtain the possession of lands,* presented to a judge of the Ulster common pleas an affidavit, in which he stated that on the 18th January, 1833, he executed a *lease* of a farm of 60 acres to Oakley, for the term of ten years, to be extended to 15 years in a certain event; by the terms of which lease Oakley was to *yield* and

pay to him *one third part of all the grain* he should raise
on the farm, and one third part of all the potatoes raised over
20 bushels; that Oakley had agreed not to cut any wood or
timber, except for fire-wood and fencing; the fire-wood to be
taken from fallen timber, and if none such on the land, then
from the largest and oldest of the green timber; and not to
*carry off* any wood or timber.   He then proceeded to state
that he had not received any rent; that on the 11th March,
then instant, (the affidavit being made on the 13th March,
1834,) he had demanded the rent of Oakley, which he ut-
terly refused to pay; and that Oakley had not complied with
the terms of the lease, in burning the *old* wood exclusively,
of which he alleged there was a sufficiency, but was cutting
and destroying the *young* green timber for fire-wood.   That
the lease being forfeited, as he considered it, Oakley still held
possession of the premises *against his will and consent.*   Up-
on receiving this affidavit the judge issued a *summons,* re-
quiring Oakley to show cause by a certain day why the pos-
session of the premises should not be delivered to Schoon-
maker, according to the statute, &c.   On the day assigned
Oakley appeared, and objected to the jurisdiction of the judge,
because the affidavit of Schoonmaker did not state that *sat-
isfaction for the rent due could not be obtained by distress
of goods* on the premises; and alleged that he appeared *sole-
ly* for the purpose of making such objection.   To which the
landlord answered, 1. That by the terms of the lease no goods
were distrainable, as there was no *certain rent* secured; and
2. That Oakley had committed *waste.*   The judge ruled that
the affidavit was sufficient to confer jurisdiction, and Oakley
not filing with him an affidavit, *denying the facts* stated in
the landlord's affidavit, he forthwith issued a warrant, direct-
ing Oakley to be removed from the demised premises, and to
have Schoonmaker put into the full possession of the same;.
which warrant was executed according to its requirements.
Oakley sued out a *certiorari,* removing the proceedings into
this court.   The case was submitted on written arguments.

NEW-YORK,
May, 1836.

Oakley
v.
Schoonmaker.

Oakley
v.
Schoonmaker.

*J. O. Linderman,* for the tenant.

*J. D. Ostrander,* for the landlord.

*By the Court,* SAVAGE, Ch. J.    By the statute, 2 *R. S.* 512, § 28, tenants for years, among others, may be removed by certain officers, among whom are judges of county courts, in certain cases: 1. Where the tenant holds over after the expiration of his term; 2. Where he holds over without permission of the landlord, after default in payment of rent, pursuant to the agreement under which the premises are held, and satisfaction for such rent cannot be obtained by distress of any goods, and a demand of such rent shall have been made, or three days notice in writing shall have been given requiring the payment of such rent, or the possession of the premises.

The counsel for the tenant contends that the affidavit is insufficient to give jurisdiction to the judge, because it does not state that any rent was due, nor that satisfaction for such rent could be obtained by distress of any goods. He further insists that the rent in this case was sufficiently certain to authorize a distress, and that the remedy given by the statute was intended to apply in such cases only where goods enough cannot be found to satisfy the rent by way of distress. The counsel for the landlord contends that satisfaction for the rent could not be obtained by distress of any goods, because the amount of rent was not fixed; it was uncertain how much grain would be raised, and the amount due the landlord was of course uncertain. He refers to 1 *R. S.* 747, § 18, where it is enacted that " When any certain services or certain rent reserved out of any lands or tenements shall not be paid or rendered when due, the person entitled thereto, may distrain for the same," to show that there could be no distress in this case. It is true, that by statute as well as at the common law, a distress may be made as well for services as for rent; but there is quite a difference in the proceedings upon the distress in the two cases. In the one case the distress is taken as a pledge, in nature of a *nomine pœnæ,* to be held until the services shall be rendered; in the other it is the means of satisfaction of the debt, and is in the nature of an execution.

1 *Burr*. 587. The counsel for the tenant therefore gains nothing, when he cites *Co. Litt*. 96, *a.*, to show that a distress may be made for a default of the tenant, in shearing the land-lord's sheep, where the holding was upon the performance of that service. The distress referred to in the statute giving this summary remedy is a remedy for the satisfaction of the rent, by distress and sale of goods. And on the other hand it seems to me that when the counsel for the landlord demonstrates, as he has done very clearly, that no distress could be made in this case, that he has also shown that his client's case is not embraced within the statute.

Our statute giving the landlord a summary remedy in certain cases is but of recent date. Previous to the statute of 1820, the landlord, in such cases, was obliged to resort to his action. We have long had a statute authorizing a landlord to proceed and obtain possession of demised premises, when the tenant failed in paying his rent. The remedy was and still is by ejectment; but the landlord must show, either by proof on the trial, or by affidavit, if judgment goes by default, that there was no sufficient distress on the premises countervailing the arrears of rent. 1 *R. L.* 440, §23. 2 *R. S.* 505, §30. The statute under which these proceedings were commenced was intended to give a similar remedy, in a summary way; that is, if the landlord could not obtain his rent by reason of defect of goods upon which he might distrain to obtain satisfaction of his rent. But the remedy *by ejectment* does not exist, unless the landlord has reserved the right of re-entry for want of a sufficient distress; nor has he a remedy under the recent statute, unless he has a right to distrain his tenant's goods to obtain satisfaction of his rent.

The legislature, I apprehend, did not intend to create a tribunal to determine whether the tenant had been guilty of a *forfeiture*. By the 44th section it is provided that the warrant shall not issue to remove the tenant, if he shall, before the issuing thereof, pay the rent due, and all costs and charges, or give security to pay the same in ten days. Hence it appears that although the rent was not paid when due, and proceedings have been instituted against the tenant, and he has been adjudged to be in default, still he shall not forfeit his estate, it

NEW-YORK,
May, 1836.

Oakley
v.
Schoonmaker.

he pays the rent, or secures it. To enable the landlord to avail himself of this provision of the statute, it is very manifest that a sum certain should be specified as being due. In this case it is not shown what sum is claimed ; nor does it appear that any rent was due, if rent is the appropriate term for the share of the produce belonging to the landlord. By the agreement, a proportion of the produce was to belong to the landlord ; but it does not appear that any produce was raised. The landlord demanded his share, but he omits to state that any grain was raised on the demised premises. If, however, he had done so, I do not think he could have brought his case within the statute ; the share to be received by him, although the compensation he receives for the use of his land, is rather in lieu of rent than rent itself. It is not certain, nor can it be made certain, within the rule permitting a distress. Where a certain sum of money is mentioned, the amount is easily ascertained ; so where a certain quantity of grain, as 20 bushels of wheat, or other quantity, I suppose the certainty would be sufficient ; but how shall the landlord ascertain to a certainty the quantity and value of one third of all the grain, so as to proceed by process in the nature of an execution. The landlord cannot avail himself of the tenant's violation of his agreement, as to cutting wood, if that were an act which would work a forfeiture. That is not the expiration of the time referred to in the 1st subdivision of the 28th section. The statute means expiration by lapse of time. It is competent, perhaps it would be wise, for the legislature to provide a remedy for a case like this ; but the present statute does not embrace it. The proceedings of the judge must be reversed, and restitution awarded, with costs.

Judgment accordingly.