NORMAN S. RIESENFELD, INC., Respondent, v. THE R-W REALTY Co., INC., Appellant.

First Department, March 23, 1928.

Summary proceedings to dispossess — proceedings based on failure of tenant to make repairs under covenant of lease — covenant gave landlord option to terminate for failure of tenant to make repairs — covenant is condition and not conditional limitation — violation of covenant did not terminate lease — summary proceedings do not lie — jurisdiction may be raised on second trial — parties cannot agree that summary proceedings may be brought — evidence shows no breach of covenant — tenant not required by lease to make good damage caused by adjoining owner while erecting building.

Summary proceedings to dispossess a tenant cannot be maintained on the ground that the tenant has violated a covenant to make repairs and that by reason of

that violation the lease terminated, where it appears that under the terms of the lease the landlord was given an option to terminate in case the tenant failed to make the repairs. The stipulation in the lease created a condition and not a conditional limitation which upon the non-performance of the covenant effectually terminated the lease. The landlord's remedy if any under the circumstances would be in ejectment.

The question stated is jurisdictional and could be raised at any time and, therefore, although the defendant did not raise it on the first trial he had the right to do so on the second trial following an appeal.

A provision in the lease that upon the exercise of the option the landlord might regain possession through summary proceedings does not give the plaintiff the right to maintain this proceeding, for the parties cannot confer jurisdiction by agreement.

On the merits the evidence shows that there has been no violation of the covenant and that the building which was old and dilapidated when leased has been materially strengthened by the erection of a building by the adjoining landowner and that the building in question is in better condition now than when leased.

A stipulation that the tenant would permit the adjoining landowner to enter the premises if necessary while erecting the building on his own land, but reserving any rights the tenant might have against said landowner for damages, does not make the tenant liable for any damage that may have been done to the building by reason of the erection of the adjoining building.

APPEAL by the defendant from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 13th day of July, 1927, reversing a final order in summary proceedings of the Municipal Court of the City of New York, Borough of Manhattan, First District, entered in the office of the clerk of said court on the 15th day of July, 1926, in favor of the defendant.

*Herman S. Hertwig* of counsel [*Everett, Clarke & Benedict,* attorneys], for the appellant.

*Arnold Lichtig* of counsel [*Herbert A. Mossler* with him on the brief], for the respondent.

MERRELL, J. The lease is of a five-story building, estimated to have been standing from forty to ninety years prior to the making of the lease in question. The building was old and dilapidated and its walls were out of plumb. The front wall bulged and the south wall encroached on the property to the south. On November 21, 1921, the Title Guarantee and Trust Company made a survey which was received in evidence at the trial in the Municipal Court. This survey showed that in 1921 the south wall leaned from the perpendicular two inches toward the south. That this south wall was then and for many years had been in very poor condition became manifest when it was exposed by the demolition in 1923 of an old building occupying premises on the southerly side. The condition of the leased building was so poor that when the building

to the south was razed down to the second floor the condition of the south wall of the leased premises became apparently so dangerous that further demolition of the adjacent building was stopped by the building department until the south wall could be repaired and tied into the front wall. The photographs received in evidence show in the southerly wall an old, vertical crack completely separating the front wall from the south wall from top to bottom. Several large holes in the south wall are shown where at some time there apparently had been windows or openings which had been partially closed with brick panels. These holes were filled and the cracks repaired and the front wall tied with star ties and iron rods to the southerly wall. The lease of the premises was entered into between the plaintiff and the defendant on March 18, 1919, and was for the term of twenty years, commencing May 1, 1919, the term expiring on April 30, 1939. The net annual rental for the first ten years was $6,000, and for the remainder of the term the rental was to be fixed as provided in the lease. Under the terms of the lease the landlord had the privilege of canceling the lease on April 30, 1929, on payment of a sum not exceeding $4,000. When the tenant took possession of the building the premises were designated to be occupied by a retail shoe store and by the terms of the lease the tenant undertook to make, at its own cost and expense, alterations and improvements to fit the premises for its use at a cost of not less than $8,000. The evidence shows that the tenant actually expended in making alterations and other improvements to the premises about $40,000. After the making of the lease the Rival Shoe Company occupied the premises for its retail shoe business and has ever since occupied the same. After the building had been tied together as necessitated by the razing of the building to the south, the demolition continued and on its completion the foundation work was begun for the new Spalding Building erected to the south of the leased property. Some difficulty arose from the fact that the sandy subsoil caused a slight settlement of the walls of the leased property and also of several buildings to the north and west of it. This settling was not great, being from three-eighths of an inch to an inch and a quarter. The settling, however, caused some cracks in the wall and a slight unseating of the transverse beams upon the first floor. The erectors of the new building repaired all such damage, and also built under the original rubble foundation of the south wall of the leased property a new concrete foundation running from front to rear and extending down thirty feet and six inches, or one foot below the foundations of the new Spalding Building. When the Spalding Building was erected it was built up against

the south wall of the leased building, conforming for the height of the old wall to all the irregularities in its surface, and, without doubt, as the result of the erection of the Spalding Building, the south wall of the leased premises is stronger than it ever was before.

These summary proceedings were instituted by the landlord upon the theory that the tenant's lease had expired by limitation. The provisions of the lease upon which the landlord relies to show such conditional limitation are the 5th, 11th and 22d. Article 5th of the lease provides, in part: " That throughout said term, the Tenant will take good care of the demised premises and appurtenances and suffer no waste or injury; make all repairs, structural and otherwise, both inside and outside, in and about the demised premises and fixtures and appurtenances, necessary to preserve the same in good order and condition, which repairs shall be, in quality and class, equal to the original work;   *   *   *   repair, at or before the end of the term, all injury done by the installation or removal of furniture and property so as to restore the demised premises to their original state; and at the end of the term to quit and surrender the demised premises in as good order and condition as they were at the beginning of the term, reasonable wear and damage, by the elements excepted."

Article 11th provides in part as follows: " If the Tenant shall make default in the payment of the rent hereunder or any part thereof, or in the making of any other payment herein provided for, or in the performance of any of the covenants or conditions herein by him to be kept or performed, and if said default shall continue for sixty days, this lease and the term hereby granted shall at the option of the Landlord cease and determine, and the Landlord may discontinue any summary proceedings to dispossess the Tenant then pending and give to the Tenant notice of intention to end the term of this lease, and thereupon this lease and the term hereby granted shall immediately cease, determine and expire as fully and completely as if the day of the giving of said notice were the date herein definitely fixed for the expiration of the term, and the Tenant will then quit and surrender the demised premises to the Landlord, and the Landlord may immediately, or any time thereafter, re-enter the demised premises and remove all persons and property therefrom either by summary proceedings or by any suitable action or proceeding at law,   *   *   *   and upon such re-entry all rights of the Tenant and all persons occupying or claiming under it in said demised premises shall cease and be wholly terminated and ended,   *   *   *."

Article 22d provides as follows: " In the event that an excavation be made for building or other purposes upon land adjacent

to the demised premises, or shall be contemplated to be made, the Tenant shall afford to the person or persons causing or to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person or persons shall deem necessary to preserve the wall or walls, structure or structures upon the demised premises from injury and to support the same by proper foundations. Nothing contained in this clause shall affect or deny the right of the Tenant to recover and receive from any or all persons making said excavations or doing said work, damages or compensation for any and all injury of whatever nature to property, business or other interest in the demised premises by reason of such work above permitted to be done or any inconvenience arising therefrom."

Two trials in the Municipal Court of these proceedings have been had. The first trial resulted in a final order providing for the summary removal of the tenant. By stipulation on the second and last trial the record of the first trial was made a part of the record before the justice in the Municipal Court on the second trial and is before us on appeal here. The Municipal Court justice at the first trial held that the repair clause of the lease placed on the tenant the obligation to rebuild the walls and that the tenant was in default for not having done so. An appeal was taken by the tenant from said order of the Municipal Court, and the Appellate Term unanimously reversed and directed a final order in the tenant's favor dismissing the petition. The Appellate Term held that there was no obligation on the part of the tenant to rebuild, which was what the landlord was requiring. When the decision was rendered an application was made for a reargument and upon reargument the Appellate Term directed a new trial with reference to the existence and effect of certain minor repairs which the tenant was required to make. The second trial in the Municipal Court was limited to the minor repairs, their existence, extent and legal effect. The justice presiding held with the tenant and dismissed the petition on two grounds: *First*, on the merits, that the evidence failed to show any such violation of the covenant to repair as was contemplated by the parties to the lease, and that it did not appear there had been any such substantial breach of the covenant to repair as would legally entitle the landlord to terminate the lease. The justice presiding also held that the petition should be dismissed on the ground that the lease contained no conditional limitation to make summary proceedings available, and that the Municipal Court, therefore, lacked jurisdiction in the proceedings. (127 Misc. 630.) From said order of the Municipal Court an appeal was taken by the landlord to the Appellate Term, and the latter court reversed

the Municipal Court, writing a *per curiam* opinion, as follows: " *Per Curiam.* Final order granted below is reversed, with $30 costs, and a final order is granted in favor of the landlord, awarding to it possession of the premises on the ground that the tenant failed to comply with the terms of its lease in failing to make the repairs to the building after notice. All concur." From such determination of the Appellate Term leave has been granted to appeal to this court.

Upon the technical ground that the lease did not create any conditional limitation, and that, therefore, summary proceedings would not lie, we think the Municipal Court was right. That point was not raised upon the first trial or upon the first appeal to the Appellate Term. The point was jurisdictional and the appellant is permitted to · raise it at any time, and did so at the second trial. Of course, if clause 11th of the lease, above quoted, did not create a conditional limitation so that the lease ended by failure to make the repairs specified, then summary proceedings would not lie as upon the expiration of the term, and if the landlord wished to evict his tenant he would be relegated to an action in ejectment for that purpose. The leading case on the subject is that of *Beach* v. *Nixon* (9 N. Y. 35). Judge JOHNSON, writing for the Court of Appeals in that case (at p. 36), said: " The appellant's case is subject to a fatal objection in this, that the provision in the lease upon which he has proceeded creates a condition merely, and not a conditional limitation. The lessor upon breach is not to be in immediately of his former estate, but at his option the hiring and the relation of landlord and tenant are to cease, and are of course to continue until he shall otherwise elect. ' Where an estate is so expressly limited by the words of its creation that it cannot endure for any longer time than until the contingency happens upon which the estate is to fail, this is a limitation. On the other hand, when an estate is expressly granted· upon condition in deed, the law permits it to endure beyond the time of the contingency happening, unless the grantor takes advantage of the breach of condition by making entry, etc.' (Crabb's Law of Real Prop., § 2135.) This is clearly the rule as to estates greater than estates for years; and as to the latter if the rule in any case be different, yet where the condition is so framed that the estate is void only at the election of the lessor, the same rule applies. (*Parmelee* v. *Oswego & Syr. R. R. Co.*, 2 Seld. [6 N. Y.] 80.) If this be so, then *Oakley* v. *Schoonmaker* (15 Wend. 226) is in point. That case holds that by the ' expiration of the term ' in 2 R. S. 513, § 28, sub. 1,* a forfeiture on breach of

---

* Now Civ. Prac. Act, § 1410, subd. 1.— [REP.

condition is not meant, and the determination of that case is plainly right. (See, also, *Benjamin* v. *Benjamin*, 1 Seld. [5 N. Y.] 383.) "

In the case of *Miller* v. *Levi* (44 N. Y. 489) the lease contained a provision that if the landlord should sell or desire to rebuild, he might terminate the lease at the end of any year by giving sixty days' previous notice. The lease ran from May first to May first. The landlord sold the premises in January, and on February twelfth notified the tenant in writing that he had sold the premises and that the lease would terminate on the following May first. In that case the court held that there was a conditional limitation and referring to the cases to the contrary, *Beach* v. *Nixon* and *Oakley* v. *Schoonmaker* (15 Wend. 226), wrote as follows (at p. 493): " In the cases referred to, of *Beach* v. *Nixon* and *Oakley* v. *Schoonmaker*, the covenants broken formed conditions in the lease, but were not conditional limitations. If broken, the lessor might thereupon take advantage of the breach and declare the lease at an end. The breach did not, however, *ipso facto* terminate the lease. There was, therefore, no limitation of the lease necessarily dependent upon the breach of the condition. The distinction is thus pointedly taken by JOHNSON, J., in the first of those cases ' The provision of the lease creates a condition merely and not a conditional limitation. The lessor, upon breach, is not to be in immediately of his former estate, but, *at his option*, the hiring and the relation of landlord and tenant are to cease, and are, of course, to continue until he shall otherwise elect.' " (Italics are the writer's.)

And (at p. 495): " Immediately upon sale by Miller, and notice thereof to the tenant, the limitation attached to the estate of the latte:, without further act on the part of Miller. There then arose a limitation of his term, to wit, its expiration on the 1st of May following. The act itself, in the lease contemplated, to wit, a sale with notice, created the expiration. Nothing further was necessary."

In *Kramer* v. *Amberg* (15 Daly, 205; affd., 115 N. Y. 655) the lower court said (at p. 207): " The ending of the lease by the exercise of the landlord's option after condition broken, is the termination, not the expiration, of the lease (*Miller* v. *Levi*, 44 N. Y. 492; *Beach* v. *Nixon*, 9 N. Y. 35)."

" The difference between a limitation, and a condition, is defined to be, that in order to defeat the estate in the latter case, it requires some act to be done, such as making an entry, to effect it, while in the former, the happening of the event is, in itself, the limit beyond which the estate no longer exists, but it is determined by the operation of the law without requiring any act to be done by anyone." (*Lyon* v. *Hersey*, 103 N. Y. 264, 269.)

In *Matter of Guaranty Building Company* (52 App. Div. 140) the lease provided that if default should be made in the payment of rent and the default should continue for ten days then *upon the landlord's election* the lease and the term should become null and void and the landlord might re-enter as if the lease had not been made. On appeal the petition in summary proceedings was dismissed and the appellate court affirmed on the authority of *Beach* v. *Nixon* (*supra*) and *Kramer* v. *Amberg* (*supra*), holding that the lease was terminated, not by a conditional limitation, but by a breach of the condition and the exercise of the option by the landlord, and that summary proceedings accordingly could not be maintained. The same question was before this court in *Davis Bros. Realty Corp., Inc.,* v. *Harte* (195 App. Div. 403). This court drew the distinction between a condition and a conditional limitation in the following language (at p. 406): " The breach of this covenant, however, is not in the nature of a conditional limitation on the demised term; therefore, the landlord cannot base his claim to resort to these proceedings upon the theory that the lease has expired. (*Kleinstein* v. *Gonsky*, 134 App. Div. 266.) The law is thus stated in 2 McAdam on Landlord and Tenant (4th ed.), 1563: ' If the tenant fails to observe the covenants upon his part contained in the lease   *   *   *   and if the lease contain a condition that upon default by the tenant in the performance of the covenants and conditions of the lease, the lease shall cease and determine, or be null and void, the estate becomes forfeited upon the breach. The breach, however, does not render the lease absolutely void, but voidable only, at the option of the lessor; and if the landlord desires to insist upon the forfeiture, he must enforce the same by action of ejectment for the possession of the premises.' "

In the 11th clause of the lease before us the provision is not that a default in the making of the repairs for sixty days would terminate the lease, but the provision was that if the default should continue for sixty days the lease and the term " *shall at the option of the landlord* cease and determine," and when the landlord served notice of the termination of the lease upon the tenant, appellant, his notice provided: " The undersigned, pursuant to the provisions of paragraphs Eleventh and Twelfth of said lease, hereby gives you notice that the undersigned intends to and does elect to end the term of the said lease." I am, therefore, unable to distinguish this situation from that which arose in the *Beach* v. *Nixon* case and in *Matter of Guaranty Building Company* (*supra*), which provide that the breach does not render the lease absolutely void, but voidable only at the option of the landlord. The lease

set up no more than a mere condition, and not a conditional limitation. The lease further provided that the landlord, after giving notice of his option to terminate, might immediately or at any time thereafter re-enter " and *upon such re-entry* all rights of the Tenant and all persons occupying or claiming under it in said demised premises shall cease and be wholly terminated and ended." It thus clearly appears that under the terms of the lease the lease was not terminated by a breach of the covenant, but only became terminated at the option of the landlord to take advantage thereof followed by actual re-entry. The lease also provided, in the 11th clause, that the landlord might re-enter " either by summary proceedings or by any suitable action or proceeding at law." I think this provision is of little assistance to the landlord, as it was not competent for them to agree that summary proceedings would be available. In *Beach* v. *Nixon* (*supra*, 37) it is said: " The law and not the consent of parties confers jurisdiction, and that rule could have no practical force, if consent given in whatever form could preclude inquiry as to the lawfulness of the jurisdiction."

Aside from this technical ground which precludes the landlord pursuing the remedy of a summary proceeding to evict the tenant, I think the evidence fairly shows that there was substantial compliance on the part of the tenant to make the repairs called for by the lease. Both at the first and at the second trial in the Municipal Court it was held in effect that the tenant should not be held to a strict performance of his covenant to repair, and where the covenant is substantially performed and no injury results to the landlord for the failure to perform strictly, the tenant is not to be held for the breach of his covenant.

It is quite evident from the record, and, indeed, from testimony of several witnesses, that the landlord was anxious to regain possession of the premises for the reason that he had made an unfavorable lease and was not receiving for the use of the premises what he regarded as sufficient rental. It fairly appears that after the erection of the Spalding Building to the south the plaintiff's building was in much better condition than it ever had been. According to the landlord's contention upon demand it was the duty of the tenant to rebuild the building by reconstructing its four walls. The Appellate Term, upon the first appeal, held that the lease contemplated no such rebuilding, excepting in the case of destruction by fire. The obligation of the tenant under the lease before us was to keep and surrender the premises in as good condition as they were at the commencement of the term, reasonable wear and tear excepted. Whatever damage was caused to the plaintiff's building resulted from the erection of the Spalding Building and

the tenant under the lease was under no obligation to repair such damage. All that the 22d clause of the lease provided was that the tenant should grant the adjacent owner a license to enter upon the premises demised for the purpose of doing whatever work the adjacent owner might deem necessary to preserve the walls and building during the excavation. At the instance of the tenant there was added to such clause a provision reserving to the tenant the right to recover from the adjacent owner damages for whatever injury resulted to the tenant's property or other business on the premises. Under the lease the tenant had fifteen years yet to hold, and from such a reservation it might have been claimed that the tenant's consent to the adjacent owner's doing whatever he might deem necessary would imply a waiver of any right by the tenant to recover damages for injuries resulting therefrom. The 22d article of the lease contains no provision requiring the tenant to make good any damage caused by the conduct of the operations on the adjacent property.

We think the Appellate Term erroneously reversed the Municipal Court, and that the order appealed from should be reversed, and the order of the Municipal Court affirmed, with costs to the appellant in this court and in the Appellate Term.

DOWLING, P. J., FINCH and McAVOY, JJ., concur.

Determination reversed and the final order of the Municipal Court affirmed, with costs and disbursements to the appellant in this court and in the Appellate Term.