**In re ADIRONDACK RAILWAY CORPORATION, Debtor.**

**Victor T. EHRE, as Trustee in Reorganization for the Estate of the Adirondack Railway Corp., Plaintiff,**

**v.**

**The PEOPLE OF the STATE OF NEW YORK, by William C. HENNESSY, as Commissioner of the New York State Department of Transportation, Defendant.**

Bankruptcy No. 81–00456.
Adv.No. 82–0283.

United States Bankruptcy Court,
N.D. New York.

March 11, 1983.

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., for plaintiff; Richard W. Cook, Syracuse, N.Y., of counsel.

Robert Abrams, Atty. Gen., State of New York, Albany, N.Y., for defendant; Konrad B. Langlie, Associate Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND PROPOSED ORDER

LEON J. MARKETOS, Bankruptcy Judge.

### STATEMENT OF THE CASE

On April 1, 1981, Adirondack Railway Corporation (hereinafter, Debtor or Lessee under a lease dated November 29, 1977 in which the State of New York is Lessor), petitioned for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101–*et seq.* (Supp. III 1979). This Court appointed Victor T. Ehre as Trustee on July 15, 1981.

On September 24, 1982, The Trustee commenced an action to determine 1) the estate's interest in a lease agreement with the Defendant-State of New York, and 2) the disposition of certain payments that are allegedly owed to the estate by the Defendant. The Trustee alleges that the Lessor agreed to lease the real property consisting of a railroad right of way including all trackage running from Remsen, New York to Lake Placid, New York (hereinafter, Remsen-Lake Placid Railroad line) to the Debtor for a term of thirty years. On February 23, 1981 the Debtor was notified by letter that the Defendant was terminating its lease agreement. Such action, contends the Trustee, is effective only after notice to the Debtor, opportunity for it to be heard, and an order of this Court.

Several other causes of action in connection with certain monies which are allegedly owed to the estate are pleaded in the complaint, but are not subject to the Trustee's instant motion for summary judgment. The Trustee is seeking here to:

 a) declare the subject lease effective;

 b) enjoin the Defendant from interfering with the Debtor's lease interest; and

 c) dismiss the Defendant's affirmative defenses.

The Defendant filed an answer in which it controverts the Trustee's material allegations and asserts several affirmative defenses. The answer defends that the lease was effectively terminated by the February 23, 1981 letter to the Debtor and that this Court does not have the authority to revive it. Furthermore, New York is a sovereign State and has not waived its sovereign immunity from a suit which seeks money damages. The proper forum for such a suit, pleads the Defendant, is the Court of Claims of the State of New York and, therefore, this Court lacks jurisdiction to decide this case. Additionally, the Defendant has moved this Court to dismiss the complaint based on its alleged lack of jurisdiction.

**1.** Local Rule 10, in pertinent part, asserts:

 (c) Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the

## STATEMENT OF FACTS

Both the Trustee and the Defendant have offered to this Court a statement of facts pursuant to Local Rule 10.[1] The following facts are undisputed:

1. On November 29, 1977, the Defendant entered into a contract with the Debtor for track rehabilitation and work to be performed to restore the Remsen-Lake Placid Railroad Line owned by the Defendant.

2. By this contract, the Debtor was granted a lease, for thirty years with a five year option for renewal of same, to use the Remsen-Lake Placid Line (Exhibit A, Article 5).

3. On February 23, 1981, the Debtor was notified by letter (Exhibit D) that the Defendant was terminating the subject lease agreement.

Based upon the parties summary judgment motion papers, the Court makes the following findings:

4. On June 15, 1980, the Debtor executed a "Supplemental Agreement" to the November 29, 1977 contract amending Appendix 3, Special Provisions section. This section was amended to include the following:

> The RAILROAD shall prepare a three year business plan showing investment requirements, revenue estimates, expense projection, debt retirement and other financial projections as shall be agreed upon by the RAILROAD and the COMMISSIONER.

Exhibit B at 2.

5. On January 16, 1981, the Debtor was notified by letter of the Defendant that it had failed to: a) submit to the Defendant all outstanding bills; and b) submit to the Defendant a business plan; both pursuant to the subject contract.

6. Defendant's letter of February 23, 1981, which it contends effectively

material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party. The motion for summary judgment may be denied if the movant fails to annex the statement required by this subdivision.

terminated the subject lease, acknowledged receipt of the Debtor's "total remaining billings and a business plan for the future operation of the Adirondack Railway." (ExD) In this same letter, the Defendant asserted the following:

Regarding the billings it appears that your submission with some minor additional input on your part, should satisfy the requirement for bringing to the State's attention your estimate of all outstanding contractual liabilities connected with the rail rehabilitation project...

Your business plan, however, has some serious deficiencies. First, there is no mention of the organization you intend to use to carry out your operations in 1981 and 1982. Lacking this, we can only assume that you plan to operate under your current corporate structure. This structure has caused the serious billing and delay problems we have today and gives us no assurance that your future operations will in fact not repeat past mistakes. In addition, your estimate of future maintenance-of-way charges of $120,000 is woefully inadequate and would lead

2. Order

(a) Emergency Resolution

The purpose of this order is to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs.

The judges of the district court of the Northern District of New York find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–958; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

(b) Filing of bankruptcy papers

The bankruptcy court constituted by § 404 of Public Law 95–598 shall continue to be

to a swift deterioration of State investment. . . .

Exhibit D, *supra* at 1.

The Debtor maintains that neither its alleged failure to specify an organization to control its 1981–82 operations, nor its alleged inadequate maintenance projections, amount to a default of its obligations under the subject lease. Accordingly, the Defendant's purported termination should be held ineffective. The Defendant alleges that all obligations under the lease were terminated by its February 23, 1981 letter to the Debtor. Furthermore, the Defendant seeks dismissal of the Trustee's complaint based upon this Court's alleged lack of jurisdiction over the State of New York because the State, as a sovereign, has not waived its immunity from suit conferred by the Eleventh Amendment to the Constitution.

## DISCUSSION

### I.

### JURISDICTION QUESTION

Whether this Court has jurisdiction over the State of New York in this case depends upon construction of Section 106 of the Bankruptcy Code, 11 U.S.C. § 106 (Supp. V 1981), and interpretation of an Order[2] is-

known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

(c) Reference to Bankruptcy Judges

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the

sued by this District in the wake of recent case law holding that this Court's power to decide certain cases, as prescribed by the Bankruptcy Reform Act of 1978, is uncon-

bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.

(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(b) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objections to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or disposi-tive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

(e) District Court Review

(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e) 2A and B of this order, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.

(2)(A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed; and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (e)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order or judgment of the district judge after review.

(f) Local Rules

In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall

stitutional. *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598, 6 C.B.C. 785, 9 B.C.D. 67 (1982) (hereinafter, *Northern Pipeline*).

■ In its memorandum of law, the Defendant argues that mere submission of proofs of claim against the estate of a debtor does not amount to a waiver of its sovereign immunity from suit under the provisions of 11 U.S.C. § 106(a). Section 106, in pertinent part, asserts:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

The legislative history of this section demonstrates Congress' intent to abrogate a state's sovereign immunity when to do otherwise would be contrary to the underlying policy of the Bankruptcy Code. Congress stated:

Section 106 provides for a limited waiver of sovereign immunity.... Congress does not ... have the power to waive sovereign immunity completely with respect to claims of a bankrupt estate against a State, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit State action that is contrary to bankruptcy policy.

There is, however, a limited change in the result from the result that would prevail in the absence of bankruptcy... First, the filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal

Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin.News pp. 5787, 5815, 6274.

The elements of waiver of sovereign immunity of a governmental unit are:

1) the estate has a claim against a governmental unit and the governmental unit has a claim against the estate; and

2) the claim against the governmental unit must be property of the estate; and

3) the claims of each must arise out of the same transaction or occurrence.

*In re Davis,* 20 B.R. 519, 521 (Bkrtcy.M.D. Ga.1982).

The Defendant has filed claims against the Debtor's estate in the amount of $55,-964.46 for withholding and sales tax. Additionally, the Defendant has asserted a claim against the Debtor's lease interest which is the subject of the instant case. The plain language of Section 106 does not state that a governmental unit must file a proof of claim before there is a waiver of sovereign immunity. 11 U.S.C. § 106 (Supp. V 1981); *In re Davis, supra* at 520. The Defendant argues that even though the State has filed claims for withholding and sales taxes, these claims do not "arise out of the same transaction or occurrence" as the subject of the instant motion. Relying on the Bankruptcy Code, Rules of Procedure, and recent case law, this Court holds otherwise.

Bankruptcy Rule 713 incorporates Federal Rule of Civil Procedure 13 which, in pertinent part, provides:

(a) A pleading shall state as a counterclaim any claim which at the time of

---

apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

(g) Bankruptcy Rules and Title IV of Public Law 95–598

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 205 and limited by SEC.

405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holdings of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982).

(h) Effective Date and Pending Cases

This order shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bank-

serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction.

In determining whether a claim "arises out of the transaction ... that is the subject matter of the opposing party's claim," the Second Circuit has taken a broad view, not requiring an "absolute identity of factual backgrounds .... but only a logical relationship between them." *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979); *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 216 (2d Cir.1955). This approach looks to the logical relationship between the claim and the counterclaim, *see, e.g. Koufakis v. Carvel,* 425 F.2d 892, 899 (2d Cir.1970), and attempts to determine whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978); *United States v. Aquavella, supra* at 22.

This Court agrees with the Trustee that the parties claims are logically related in that both arise out of the same contract. Insofar as the Defendant's tax claims against the Debtor are for withholdings from employee salaries, and sales tax on materials used by the Debtor to rehabilitate the railroad line, the claims are logically related to the instant motion. The common link between the claims is the contract which binds the parties. It would be unjust for this Court to consider the Defendant's tax claims, and abstain from hearing the Trustee's claim against the Defendant's lease interest.

In summary, by the plain language of 11 U.S.C. § 106, Congress waived the sover-

eign immunity of a governmental unit where there is a claim against the unit, that is property of the estate, and that arose out of the same transaction or occurrence from which the governmental unit's claim arose. The Defendant does not dispute the first two requirements of this three prong test. The question for decision, as stated by the Defendant, is "whether the (subject) claims arose out of the same transaction or (o)ccurrence." The answer is in the affirmative; therefore, Congress has waived sovereign immunity for the State of New York in this case.

 While this Court has jurisdiction over the Defendant, another interesting question presented here is whether this Court has subject-matter jurisdiction pursuant to an Order of December 24, 1982 (hereinafter the Order) issued by this District in the wake of *Northern Pipeline.* The Defendant has failed to plead this Defense. Nevertheless, the Court raises the question of its subject-matter jurisdiction *sua sponte. United States v. United Mine Workers of America,* 330 U.S. 258, 288, 67 S.Ct. 677, 693, 91 L.Ed. 884 (1947) (holding that every court has the power to determine if it has the capacity to hear and decide the merits of the case before it).[3]

*Northern Pipeline* involved an action brought in the United States Bankruptcy Court for the District of Minnesota by the Appellant-Chapter 11 Debtor wherein claims were asserted that the Appellee had breached its obligations under a contract which had been entered into by and between the parties. The Appellee responded with a Motion to Dismiss for lack of jurisdiction. The argument was that the bankruptcy court lacked jurisdiction over the action for breach of contract because it involved an exercise of "the Judicial Power of the United States" which may be exercised only by tenured judges as provided by

ruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.

**3.** The Supreme Court has held that judges of courts of limited jurisdiction are not immune from civil liability where there is no jurisdiction and the lack of jurisdiction over the subject

matter is known to the judge. The *Northern Pipeline* decision, no matter how interpreted, puts Bankruptcy Judges and District Judges on notice that 28 U.S.C. § 1471 is unconstitutional. *In re The Schear Realty and Investment Co., Inc.,* 25 B.R. 461, ¶ 68,949 Bankruptcy Law Reporter 81,627 (Bkrtcy.S.D.Ohio W.D.1982).

Article III of the Constitution and judges of the bankruptcy court are not such tenured judges. The bankruptcy court denied the Motion but the district court reversed the bankruptcy court. *Marathon Pipeline Co. v. Northern Pipeline,* 12 B.R. 946, 952–56 (D.Minn.1981). Soon thereafter, a direct appeal to the Supreme Court was taken. By its decision in *Northern Pipeline,* that Court held:

> that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of 'the essential attributes of the judicial power from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

*Northern Pipeline* 102 S.Ct. at 2878–80.

In his dissenting opinion, Chief Justice Burger explains:

> that . . . the Court does not hold . . . that Congress' broad grant of jurisdiction to the new bankruptcy courts is generally inconsistent with Article III of the Constitution. Rather, the Court's holding is limited to the proposition stated by Justice REHNQUIST in his concurrence in the judgment—that a "traditional" state commonlaw action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Article III court" if it is to be heard by any court or agency of the United States. This limited holding, of course, does not suggest that there is something inherently unconstitutional about the new bankruptcy courts; nor does it preclude such courts from adjudicating all but a relatively narrow category of claims "arising under" or "arising in or *related* to cases under" the Bankruptcy Act. (emphasis supplied)

*Northern Pipeline, supra* 102 S.Ct. at 2882. The Chief Justice suggests that the problems arising from *Northern Pipeline* can be

resolved by "routing" "ancillary common-law actions," to the district court. *Id.* Hence, the Order, quoted in full at note 2, was adopted in an effort to "route" these "ancillary common-law actions." The Order's purpose is "to supplement existing law and rules in respect to the authority of the bankruptcy judges . . . to act in bankruptcy cases and proceedings. . ." It hopes to achieve "the orderly conduct of the business of the court. . ."[4]

The threshold issue is whether determination of the parties' interests in the subject lease agreement is a "related proceeding" under the Order. If so, this Court "may not enter a judgment or dispositive order, but shall submit findings, conclusions and a proposed judgment or order to the district (court). . ."

Order of December 24, 1982, *supra* at Note 2.

> The Order, in pertinent part, asserts: (d)(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, *could have been brought in a district court or a state court.* Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; . . . orders to turn over property of the estate; . . . A proceeding is not a related proceeding merely because the outcome will be *affected by state law.* (emphasis supplied)

General principles of statutory construction should be applied to interpret the Order. The words of the Order should receive their "ordinary acceptation and significance," where such construction is consonant, and not at variance, with the purpose of the Order, and does not thwart or defeat the same. *See generally, Helvering v. Hammel,* 311 U.S. 504, 81 S.Ct. 368, 85 L.Ed. 303 (1941).

---

**4.** Order of December 24, 1982; *See generally,* Vihon, *Bulletin on Northern Pipeline,* 88 COMM.L.J. 5 (January 1983); Vihon, *An Anal-* *ysis of the Northern Pipeline Case,* 87 COMM. L.J. 397–404 (August/September 1982).

■ Upon initial examination, paragraph (d)(3)(A) of the order seems to contain contradictory language. The first sentence defines a "related proceeding" as one that "could have been brought in a district court or a state court." The last sentence of this section advises that a "proceeding is not a related proceeding merely because the outcome will be affected by state law." Interpretation of this paragraph turns upon the meaning of "affected." The term "affected," in this context, denotes that a proceeding is not a *related* proceeding merely because a court must *apply* state law. If that court, however, must *interpret* state law, then the proceeding is a *related* one. This Court holds that the disposition of a related proceeding is controlled by state law rather than the bankruptcy statute.

■ The trustee's instant motion for summary judgment ostensibly seeks a declaratory judgment holding the subject lease viable and enforceable and an injunction against the Defendant from interfering with the Debtor's lease interest. The disposition of the motion turns upon construction and interpretation of a termination clause within the subject lease agreement. Lease agreements enumerate contractual obligations and are controlled by the law governing the contract. *See e.g., Mallory Associates, Inc. v. Barving Realty Co.,* 300 N.Y. 297, 90 N.E.2d 468 (1949). Since October 1, 1979, Congress conferred upon the bankruptcy court, the power to apply state law in resolving disputes arising from a leasehold interest subject to a bankruptcy proceeding, as would a district court, 28 U.S.C. § 1471(c), and exclusive jurisdiction over all of the property interests of the debtor. *Id.* § 1471(e) The Order rescinds this power and mandates the bankruptcy court to prepare a decision for consideration by the district court.

■ In the instant case, a court must decide whether a termination clause in the subject lease operates as a conditional limitation or condition subsequent. This Court holds that the law of the State of New York controls this issue. Declaration of the par-

ties' interests in the contract is a "related proceeding" within the meaning of the Order and, therefore, this Court may not meet this motion directly. Instead, the following are this Court's discussion, conclusions of law, and proposed order which shall be submitted to a United States District Judge for the Northern District of New York, for further consideration.

This Court grappled with the effect of a termination clause within a lease-contract and whether the same should be construed as a conditional limitation or condition subsequent in *In re Delta Motor Hotel of Syracuse, Inc.* 10 B.R. 585 (Bkrtcy.N.D.N.Y. 1981). In *Delta,* this Court, in dictum, stated that the subject termination clause probably was not a conditional limitation because its defeasance clause was couched in terms of options rendering the lease voidable and not void. *Id.* at 594.

Conditional limitations in a leasehold interest which prematurely accelerate the term of a lease have been used by landlords and sanctioned by the courts. This "subtle device" is enforceable by legal process. *See First National Stores, Inc. v. Yellowstone Shopping Center, Inc.,* 21 N.Y.2d 630, 290 N.Y.S.2d 721, 237 N.E.2d 868 (1968). Clearly, a conditional limitation is a "device for terminating the estates of defaulting tenants which has the double-edged advantage of being quick and inexpensive and being free from the hazards to which the use of the condition subsequent is subject ... The only handicap to be met is in the use of an exact formula of words." [5]

In *Martin v. Crossley,* 46 Misc. 254, 91 N.Y.S. 712 (Sup.Ct.App.T.1905), the Court said:

> The election of the landlord to take advantage of a breach of condition by entry, and thus terminate the estate, is to be distinguished from the case where, by the provision of the lease, the term is created to endure only until an option to earlier end it has been exercised by the landlord. In the latter case, upon the

**5.** Niles, *Conditional Limitations and Leases in* *New York,* 11 N.Y.U.L.Rev. 15 (1933).

exercise of the option, the term 'expires' in the sense of the statute.

*Id.* at 256, 91 N.Y.S. 712.

In *Burnee Corp. v. Uneeda Pure Orange Drink Co., Inc.,* 132 Misc. 435, 438, 230 N.Y.S. 239 (1st Dep't 1928), Justice Levy set forth three types of conditional limitations:

1. Where the event agreed upon is to limit the estate without future act of either party. An example would be a limitation such as "estate is to 'X'" so long as he remains unmarried.

2. Where the happening is set in motion by the landlord. An example of this type of clause is one which furnishes the landlord the right to terminate the lease on a given number of days notice, in the event of a bona fide sale of the property.

3. Where there is a breach of condition on the part of the tenant of a provision inserted in the lease for the benefit of the landlord, the violation of which entitles the landlord to serve a notice electing to terminate the lease after the expiration of a certain specified time. The case at bar is of the third type.

The New York courts have insisted upon properly phrased terms of limitation where a landlord seeks to evade the slow and expensive action of ejectment. *Matter of Guaranty Building Co.,* 52 App.Div. 140, 64 N.Y.S. 1056 (4th Dep't 1900); *Janes v. Paddell,* 67 Misc. 420, 122 N.Y.S. 760 (Sup.Ct. App.T.1910). Similarly, where the lease provision gave the landlord an option and an election by the landlord was necessary to terminate the lease, the term was not void but voidable and the lease only created a condition subsequent. *Riesenfeld, Inc. v. R–W Realty Co.,* 223 App.Div. 140, 228 N.Y.S. 145 (1st Dep't. 1928).

In the instant case, the Trustee contends that a termination clause in the subject lease operates as a condition subsequent rather than a conditional limitation. The clause, in pertinent part, asserts:

The COMMISSIONER *may* terminate this lease . . . in the event that the Railroad is determined to be in default of any of its obligations under this Agreement at the expiration of a period of thirty (30) days from the date written notice of any such default is sent to the Railroad by the Commissioner. (emphasis supplied)

Article 5, § 1.1(g).

The term "may", in the above cited clause, gives the lessor an option to terminate the lease agreement upon the Debtor's breach. This provision, is, therefore, a condition. The lease does not provide that the term shall automatically expire upon thirty days after written notice of default nor does it state that termination of the lease will be automatic upon the lessor's default. Thus, the lease must continue until the lessor exercises its option within the confines of the agreement. This Court holds that the termination clause is a condition subsequent, a violation of which does not render the contract void. Since the Defendant failed to reenter the premises, this Court holds that the lease remains enforceable pursuant to the laws of the State of New York.

The Defendant contends that since no operations have been conducted on the railroad line since February 23, 1981, the Debtor acquiesced in a termination of the lease. This argument is meritless. In the instant case, the Debtor did not perform any act that would indicate a surrender of the premises. Even if it did, the Defendant did not attempt to accept a surrender of the premises. Such acceptance requires an affirmative act by the lessor such as reentry or the releasing of the premises to another. *Mt. Read Terminals, Inc. v. Great Lakes Express Co., Inc.,* 92 Misc.2d 578, 400 N.Y. S.2d 699 (Sup.Ct. Monroe County 1977). The Defendant did not resume possession of the premises. There is, therefore, no surrender of the premises nor acceptance thereof by operation of law.

The Trustee seeks from this Court, pursuant to Bankruptcy Rule of Procedure 765, a *permanent* injunction against the Defendant so that the State will not interfere with the Debtor's leasehold interests. The Defendant contends that this Court does not have the power to issue a permanent injunction pursuant to the *Northern Pipeline*

case. The Order asserts that a bankruptcy judge may perform all acts and duties necessary for the handling of bankruptcy matters and conduct all proceedings except: A) a proceeding to enjoin a *court,* Order of December 24, 1982, (c)(1)(A). No provision within the Order prohibits a bankruptcy judge from issuing an injunction against a *party* to a proceeding before the Court. This Court, therefore, will act pursuant to Rule 765 and also comply with the Order in making the following proposed findings, conclusions of law, and order with respect to the issuance of a permanent injunction against the Defendant-State of New York.

Rule 765 essentially incorporates Rule 65 of the Federal Rules of Civil Procedure, which in pertinent part, controls the procedure for which a party may seek, and a federal court may grant, a Preliminary Injunction or Temporary Restraining Order. This Circuit has long provided that the test for the grant of an injunction is that of irreparable harm. *See Miller Brewing Company v. Carling O'Keefe Breweries of Canada, Ltd.,* 452 F.Supp. 429, 438 (W.D.N.Y.1978). Since the Trustee is seeking a permanent injunction instead of a preliminary injunction, has failed to comply with the substantive provisions of FRCP 65, and has not shown irreparable harm, this Court proposes that the Trustee's demand for a permanent injunction against the Defendant is not ripe for decision and be and the same is hereby denied.

## CONCLUSIONS OF LAW

By the facts presented, this Court makes the following conclusions of law:

1) that this motion is a "related proceeding" within the meaning of an Order of December 24, 1982 issued by this District in the wake of the *Northern Pipeline* case;

2) that the Defendant-State of New York has waived its sovereign immunity from suit as conferred by the Eleventh Amendment of the Constitution;

3) that Article 5 § 1.1(g) of the subject lease agreement is a condition subsequent which becomes effective upon the lessor's affirmative action to exercise its option within the confines of the contract. Accordingly, the subject lease remains viable and enforceable because it did not terminate automatically upon the Debtor's default;

4) that this Court has the power to issue injunctive relief pursuant to Bankruptcy Rule of Procedure 765, against a party in a proceeding before the Court, but the facts in this case do not warrant issuance of the same; and

5) that the Defendant has failed to offer to this Court an affirmative defense which survives this motion for summary judgment.

## PROPOSED ORDER

In accordance with the aforesaid findings of fact and conclusions of law, this Court submits the following Proposed Order:

ORDERED that the Trustee's motion for summary judgment against the Defendant be and the same is hereby granted to the extent enumerated herein, without costs; it is further

ORDERED that the Trustee's motion for a permanent injunction against the Defendant be and the same is hereby denied; without costs; it is further

ORDERED that the Trustee's motion to dismiss the affirmative defenses of the Defendant be and the same is hereby granted, without costs; it is further

ORDERED that the Defendant's cross-motion for summary judgment in its behalf be and the same is hereby denied, without costs.

[Note: The Proposed Order was signed on April 9, 1983, by Chief Judge Howard G. Munson, U.S. District Court for the Northern District of New York.]