■ CENTRE GREAT NECK Co., Respondent, v PENN ENCORD, INC., Defendant, and RITE AID CORPORATION, Appellant. [715 NYS2d 71] —In an action to recover damages for breach of a lease, the defendant Rite Aid Corporation appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Queens County (Leviss, J.H.O.), dated June 21, 1999, as is in favor of the plaintiff and against it in the principal sums of $24,650 for roof repairs, and $7,500 for foundation repairs.

Ordered that the judgment is modified, on the law, by (1) deleting the provision thereof awarding damages for roof repairs in the principal sum of $24,650 and substituting therefor a provision awarding damages for roof repairs in the principal sum of $1,953, and (2) deleting the provision thereof awarding the principal sum of $7,500 for foundation repairs; as so modified, the judgment is affirmed insofar as appealed from, with costs to the appellant.

The defendant Penn Encord, Inc. (hereinafter the tenant), leased commercial space from the plaintiff, Centre Great Neck Co., pursuant to a 10-year lease commencing in 1991. Approximately five years later, in 1996, the tenant vacated the premises. The plaintiff commenced a summary nonpayment proceeding and obtained a warrant of eviction. It initiated this action against the tenant and the defendant Rite Aid Corporation (hereinafter Rite Aid), as the guarantor on the lease, seeking rents and taxes for the balance of 1996, as well as an award of an attorney's fee and various repair costs. The plaintiff moved for summary judgment and was awarded judgment as a matter of law on both liability and damages on its cause of action for rent and property taxes. The plaintiff was awarded judgment as a matter of law on liability on its causes of action

for repairs, legal fees, and costs, and those causes of action were referred to a Judicial Hearing Officer (hereinafter the JHO) for an inquest on damages. The JHO concluded that Rite Aid was responsible to pay, *inter alia*, the costs of a complete roof replacement in the sum of $24,650, and foundation repairs in the form of a "Vulcan" sump-pump system in the sum of $7,500.

Where, as here, a lease contains clauses requiring the tenant to maintain the premises in "good condition" and to surrender the premises in the same condition as at the commencement of the lease, the two clauses must be read together (*see, Bushwick Realty Co. v Sanitary Fireproofing & Contr. Co.,* 129 App Div 533) to determine the intent of the parties. Reading the clauses together, the subject lease required the tenant to keep the premises in a state of repair such that it could be returned to the plaintiff in as good a condition as it was in at the commencement of the lease (*see, Norman S. Riesendfeld, Inc. v R-W Realty Co.,* 223 App Div 140).

If the plaintiff had intended the tenant to put the property in a condition better than it was in at the commencement of the lease, it could have expressly contracted for that result. "The law is well settled that changes in a lease are not to be presumed or implied; and no additional liability will be imposed upon a tenant unless it is clearly within the provisions of the instrument under which it is claimed" (*455 Seventh Ave. v Hussey Realty Corp.,* 295 NY 166, 172).

Under these circumstances, the plaintiff cannot be awarded any more than the cost of patching the roof. In this regard, the record supports an award of $1,953. The plaintiff is not entitled to an award which includes costs related to the installation of a "Vulcan" sump-pump system to prevent future water damage to the foundation, since these repairs would unquestionably put the premises in a better condition than it was in at the commencement of the lease (*see, Novendstern v Mt. Kisco Med. Group,* 177 AD2d 623). Altman, J. P., Friedmann, Krausman and Smith, JJ., concur.